# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

MARK GASPER,

               Petitioner,    :       Case No. 1:25-cv-00731

    - vs -                          District Judge Jeffery P. Hopkins
                                        Magistrate Judge Michael R. Merz

WARDEN,
 Madison Correctional Institution,

                                    :
               Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Mark Gasper to obtain relief from his conviction for rape in the Hamilton County Court of Common Pleas, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 14), the Return of Writ (ECF No. 12), and Petitioner's Traverse ()ECF No. 27).

**Litigation History**

On November 21, 2019, the Hamilton County Grand Jury handed down an indictment charging Gasper with seven counts of rape in violation of R.C. 2907.02(A)(1)(c)(Indictment, State Court Record, ECF No. 14, Ex. 1). A trial jury found Gasper guilty on Count One, but not guilty on the remaining counts. *Id.* at Exs. 12, 13. Gasper appealed, but the verdict was affirmed. *State v. Gasper,* 2023-Ohio-1500 (Ohio App. 1st Dist, May 5, 2023). The Ohio Supreme Court accepted

jurisdiction of Gasper's further appeal, but affirmed.  *State v. Gasper*, 176 Ohio St.3d 563 (2024).

Gasper then[1] filed his Petition in this Court, pleading the following Grounds for Relief:

> **GROUND ONE:** The State of Ohio erred by failing to suppress Nestheide's testimony involving the GSKQ [General Sexual Knowledge Questionnaire] .
>
> **Supporting Facts**: Petitioner, Gasper argued in his first assignment of error that the GSKQ is not an objectively verifiable measure of sexual knowledge for purposes of assessing a person's capacity to consent, that it is not generally accepted testimony in the psychological field and therefore, Nestheide's report and testimony involving the GSKQ was inadmissible. The State ultimately decided, after some hard faught [sic] search for supporting case law, that there is no single generally-accepted test that is better than another.  Nestheide also offered that a 2017 scientific paper identified the GSKQ as a commonly-used tool to assess. sexual knowledge. Nestheide used multiple tests to conclude that K.W. was unable to consent. Moreover, Nestheide interviewed K. W. and evaluated her personally to conclude that she was unable to consent. Additionally, Gasper was able cross-examine [sic] Nestheide about the GSKQ.
>
> The States decision creates a pure question of law that resulted in a decision that was contrary to, or a mixed question of law and facts that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States under 28 USCS 2254 (d)(l).
>
> **Ground Two:** The State of Ohio erred convicting Gasper based on insufficient evidence of a substantial impairment.
>
> **Supporting Facts:** Petitioner asserts that the evidence was insufficient to convict him because the state failed to prove both that K.W.'s ability to consent was substantially impaired by her medication or low I.Q. and that Gasper had knowledge of any impairment.  The State subsequently found that although substantial impairment may be established through expert testimony, it is not required. Substantial impairment also may be established through lay testimony. *Id*. K.W.'s I.Q. was 66 in 2003 and 76 by 2019. Dreyer and Nestheide agree that K.W. has borderline intellectual

---

[1] Respondent concedes the Petition was timely filed.

functioning. Additionally, K.W., who was in her 30s, had never lived independently. Her "constellation of physical conditions" required regular support.  K.W. received services through DDS at least until the age of majority and became eligible for DDS services again in August 2019. K.W. testified that her DDS services should never have been discontinued. And the Mayerson Center does not evaluate normally functioning adults.  Even through Petitioners expert testifying that K.W. could consent to sex, Nestheide testified that she could not. This case truly was a battle of the experts.

But when the court viewed it in a light most favorable to the prosecution, testimony that a victim had a learning disability satisfied the "mental condition" component of Ohio's Law.

The States decision creates a mixed question of law and facts that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States under 28 USCS 2254 (d)(l).

**Ground Three:** The State of Ohio erred by admitting other-acts that was [sic] prejudicial in swaying the jury against him.

**Supporting Facts**: Petitioner argues that the other-acts evidence in which K. W. asserted that Gasper had killed her dog, Candy, should have been excluded because it was not relevant to whether K.W. had the ability to consent or resist due to a substantial mental impairment. He further argues that this evidence was prejudicial in swaying the jury against him.  The State determined that the accusation that Gasper killed K.W.'s dog was intrinsic to the offense. K.W. testified that she believed Gasper had killed Candy so that K.W. would move to Tennessee with him and because Candy barked at Gasper when he was in K.W.'s bed, which was in her parents' home. The testimony did not involve acts extrinsic to the offenses for which Gasper was accused. Instead, they involved an act that, if it occurred, would have helped facilitate Gasper's engaging in sex with K.W.

The States decision creates a mixed question of law and facts that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States under 28 USCS 2254 (d)(l) or it involved a question of pure fact which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, 28 USCS 2254 (d)(2).

3

**Ground Four**: The State Of Ohio Denied Petitioner His 5th Amendment To The United States Constitution, Right To A Fair Trial, Present A Complete Defense And Due Process As Has Been Held In The 14th Amendment To The United States Constitution When It Denied His Motion For New Trial Due To The Misrepresentation To The Jury Concerning The Use Of Regularly Prescribed Medicine.

**Supporting Facts:** Petitioner argued to the Supreme Court of Ohio that the standard jury instruction on substantial impairment is flawed because it implies that the term can relate only to a temporary condition and that the use of that instruction in this case opened the door for Gasper to be improperly convicted based on evidence of K.W.'s having taken her usual, prescribed medication, which was contrary to the State's original theory of the case.

The Ohio Supreme Court found first clarified that the impairment must exist at the time of the events in question. Gasper failed to identify any decision or other source (outside of his own argument) indicating that the language caused confusion for anyone in the 37 years since that decision was announced. Furthermore, Gasper failed to object at trial to the jury instruction that he now challenges and has not established that he suffered any prejudice from the trial court's jury instruction that affected his substantial right. Thus petitioner could not demonstrate plain error.

The State's judgement creates a pure question of law that resulted in a decision that was contrary to United States Supreme Court Law. Even more, there may also be a mixed question of law and facts that resulted in its decision being an unreasonable application. If this is the case then AEDPA Deference does not apply because the state arrived at a factual conclusion based upon an incomplete or incorrect set of facts.

(Petition, Doc. 1, PageID 5-12).

# Analysis

**Ground One:  Admission of Improperly Qualified Testimony**

In his First Ground for Relief, Petitioner complains that the trial court improperly admitted testimony of an expert witness based on inadequately qualified expert testimony.  The trial court did so by failing to suppress Dr. Nestheide's testimony involving the GSKQ [General Sexual Knowledge Questionnaire] .and then allowing the jury to hear that testimony and base its verdict on it.

Respondent argues that this does not state a claim for relief in habeas corpus (i.e. is not cognizable) because there is no United States Supreme Court case law setting the parameters of admissible expert testimony.

Gasper argues in his Traverse:

> Specifically counsel stated "the report as well as Dr. Nestheides testimony must, therefore be excluded as evidence pursuant to Ohio Evid. R. 702, *Miller v. Bike Athletic Co.* (1998), 80 Ohio St. 3d 607 and *Daubert v. Merrell Dow Phaims., Inc.,* 509 U.S. 579 (1993)... and their progeny."  Doc., ECFll,PageID#57).

> Counsel started his argument by invoking the controlling United States Supreme Court Law of Daubert. (Doc., ECF 11, PageID#183). The application of Ohio Evid. R. 702 and Daubert are distinct. Evid. R. 702 addresses preconditions to the admissibility of evidence. See State V. Nemeth. 82 Ohio St. 3d 202.208 (1998). Daubert, on the other hand, demands courts to also evaluate if the evidences probative value is not substantially outweighed by unfair prejudice, so as not to run afoul of due process and at its core petitioner's right to a fair trial under the United States Constitution's Sixth and Fifth Amendments. See Daubert. 509 U.S. at 590. The courts gatekeeping function is a constitutional one. Therefore Ground One is cognizable in the federal arena.

(Traverse, ECF No. 27, PageID 4713).

This argument misses a critical distinction: *Daubert* is not a constitutional decision.  In deciding the *Daubert* case, the Supreme Court was interpreting Fed.  R. Evid.  702 which governs the admission of expert evidence in trials in federal court.  In doing so, it held that adoption of the Federal Rules of Evidence had displaced the prior test for admission of expert testimony from *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923).  It held that the Federal Rules of Evidence, which the Supreme Court itself had adopted under the Rules Enabling Act, were to be interpreted like any statute.  The Supreme Court has never held that *Daubert* is binding in any state court by virtue of the United States Constitution.  It is binding in federal courts because the Rules Enabling Act gives Court authority to enact rules of procedure to be applied in federal courts, such as the Rules of Civil Procedure and the Rules of Criminal Procedure. Ohio has a rule of evidence which parallels Fed.  R. Evid.  702, but it is binding in Ohio trial courts by virtue of the Ohio Supreme Court's authority to adopt such rules.

Neither the United States Supreme Court nor the Sixth Circuit has ever held that *Daubert* is binding on Ohio courts by virtue of the federal Constitution.  Therefore even if admission of the GSKQ [General Sexual Knowledge Questionnaire] or Dr. Nestheide's testimony based on it would have violated *Daubert*, that would not be a basis for granting relief because, as Petitioner acknowledges, habeas corpus relief is limited to convictions which violate the United States Constitution.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

Ground One should be dismissed because it does not state a claim cognizable in federal habeas corpus.

**Ground Two:  Insufficient Evidence on the Element of Substantial Impairment**

In Ground Two, Gasper asserts he was convicted on insufficient evidence of a critical element of the charged offense.

Unlike Ground One, Gasper's Ground Two does state a claim cognizable under the Fourteenth Amendment.  An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction.  *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial

8

> deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

The First Count of the Indictment charged Gasper

> engaged in sexual conduct to wit: cunnilingus, with K.W.," whose ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age, and the defendant knew or had reasonable cause to believe that K.W.'s ability to resist or consent was substantially impaired because of a mental condition, physical condition or because of advanced age, in violation of Section 2907.02(A)(l)(c) of the Ohio Revised Code."

(Indictment, State Court Record, ECF No. 14, Ex. 1).  Trial proof focused on K.W.'s mental capacity.  On appeal to the First District, Gasper raised this insufficient evidence claim as his second assignment of error and the First District decided it as follows:

> {¶18} A 2003 letter from K.W.'s pediatric neurologist stated that K.W.'s I.Q. was 66 and she "associates better with 12-year-old peers than same-aged peers."

> {¶19} D.W. (K.W.'s father) testified that K.W. is "mentally about 14 years old." D.W. discussed the physical and developmental issues that K.W. had experienced growing up. He said that K.W. was in special classes in school, had participated in programs designed to help developmentally-disabled individuals get jobs and strive for independence, and had been collecting supplemental social security income ("SSI") since she was 21 (after the adoption

9

subsidy ran out). D.W. testified that K.W. was unable to obtain a driver's license or employment despite the training due to her developmental delays.

{¶20} K.W. testified about her developmental delays, stating that she should never have been disconnected from DDS services. K.W. stated, "The thing with cerebral palsy and intellectual disabilities and mental challenges, I don't understand everything and I don't remember everything. I have short-term memory loss. I was in special classes at school." K.W. discussed Project Search and the Developmental Disabilities Behavioral Pediatrics Clinic, where she trained in hopes of becoming employed. K.W. had never been able to secure a job. K.W. was very involved with the Special Olympics. {¶21} K.W. struggled to explain concepts. When explaining the first night that she and Gasper engaged in intercourse, she stated, "Well this was the first night of actual—I guess everybody has been calling it intercourse." When asked what she meant by "he did oral," she responded, "[i]t was like oral sex, I guess, is how you explain it." She struggled to remember the places Gaspar touched her body. K.W. expressed discomfort with talking about the incidents. She said she could not explain to the jury what happened "like [she] was able to before" because she could remember more when it first happened when "[i]t was freshly in [her] mind." Instead of making her name body parts in open court, the court permitted K.W. to circle parts on anatomical pictures. K.W. struggled to discuss the final sexual encounter with Gaspar, repeatedly saying, "I can do this."

{¶22} K.W. appeared to be frustrated during cross-examination when responding to counsel's repeatedly asking why she did not refuse Gasper. K.W. once responded, "I wish it was that easy. I don't know if I could have. I don't know if I could have. I was stuck. I couldn't get out of anything. The only thing I had freedom for was Special Olympics." She also responded, "What was I supposed to do? I had said no many times. Just because I don't say it, I shake my head no. It didn't matter. Why don't you understand that?" K.W. expressed that she did not know what to do and she wanted to tell somebody.

{¶23} Nestheide testified to administering the MMSE-2, explaining that it tests whether there is "any kind of impairment in somebody's cognitive functioning." K.W. scored 27 out of a possible 30 points, and "those tests are essentially designed so that most everyone would get every point available." Nestheide asserted that K.W.'s score was lower than would be expected, being that she had graduated from high school.

10

{¶24} Nestheide explained that, considering K.W.'s results on the MMSE-2, the Vineland, and the Wechsler, K.W. was in the borderline range of intellectual functioning, which used to be called "mental retardation." He explained that people who function in this range tend to be gullible, naïve, struggle with problem solving in social situations, can have difficulty understanding the intentions of others, and more. While people with borderline intellectual functioning can handle most of their day-to-day activities by themselves, they struggle "a little bit more" when they are in unusual situations.

{¶25} Nestheide testified that he considered her rationality, knowledge, and voluntariness when determining K.W.'s ability to consent to sex. He tested K.W.'s rationality via the MMSE-2, the Vineland, and the Wechsler tests. K.W.'s score was lower than 95 percent of the population, rendering her rationality impaired due to her overall cognitive functioning. Nestheide testified that this affects K.W.'s ability to agree to engage in sexual activity.

{¶26} Nestheide testified that the GSKQ is used to test the sexual knowledge of people with or without disabilities. It covers whether the person understands anatomy and physiology, acts of sexual activity, risks of pregnancy and illness, and more. He added that there are a variety of tools to make these findings and there is no tool that is generally accepted over another. K.W. scored 57 points out of a possible 110. Her "knowledge of sexual activity was more consistent to the knowledge that people with a more significant intellectual disability might have." Nestheide testified that the GSKQ revealed that K.W.'s sexual knowledge is impaired because her scores were closer to what would be expected of someone with a more significant disability.

{¶27} Voluntariness is the "ability to express and act on the choice to engage or not engage in sexual activity." K.W. informed Nestheide that she told Gasper, "No," because she did not want to engage in sexual activity, but she "ultimately complied because there were threats made against her siblings." Nestheide concluded that K.W.'s results did not meet the voluntariness standard because she complied due to feeling threatened, and K.W.'s belief that Gasper had killed Candy also impaired voluntariness.

{¶28} When asked on cross-examination whether rationality, voluntariness, and knowledge were like "a three-legged stool" that falls over when one leg is taken away, Nestheide responded, "I haven't seen it written in the literature that if one were removed, that

would change the ultimate outcome." He later stated that he believed that all three legs are needed.

* * *

## C. Gasper's conviction was supported by sufficient evidence.

{¶60} Gasper's second assignment of error asserts that the evidence was insufficient because the state failed to prove both that K.W.'s ability to consent was substantially impaired by her medication or low I.Q. and that Gasper had knowledge of any impairment.

{¶61} The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717. It is a question of law for the court to determine, and this court is not to weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *Id.* at ¶ 12.

{¶62} Gasper was convicted of rape under R.C. 2907.02(A)(1)(c). It provides:

No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

{¶63} The term "substantially impaired" is commonly understood to be consistent with "a present reduction, diminution, or decrease in the victim's ability" to control, or appraise the nature of, the defendant's conduct. *State v. Jordan*, 1st Dist. Hamilton Nos. C-210198 and Hamilton Nos. C-210199, 2022-Ohio-1512, ¶ 14, quoting *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987) (interpreting "substantial impairment" under R.C. 2907.03(A)(2)). Ohio courts have routinely applied this definition in cases of gross sexual imposition and rape of a victim impaired due to a cognitive disability or voluntary intoxication. *State v. Yerkey*, 7th Dist. Mahoning No. 20MA0087, 2021-Ohio-3331, ¶ 29.

12

{¶64} Although substantial impairment may be established through expert testimony, it is not required. *State v. Slaughter*, 2d Dist. Montgomery No. 25270, 2013-Ohio-1824, ¶ 7. Substantial impairment also may be established through lay testimony. *Id.* Viewed in a light most favorable to the prosecution, testimony that a victim had a learning disability satisfied the "mental condition" component of R.C. 2907.02(A)(1)(c). *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-2897, ¶ 68.

**Sufficient evidence supported K.W.'s lack of capacity to consent**

¶65} The testimony established that K.W. was in special education classes, had cognitive delays, and was in the borderline range of intellectual functioning, which used to be called "mental retardation." Nestheide testified that people in K.W.'s intelligence range tend to be naïve, gullible, and have difficulty understanding the intentions of others. *See State v. Bohannon*, 1st Dist. Hamilton No. C-880004, 1989 WL 22007, 1, 1989 Ohio App. LEXIS 831, 3 (Mar. 15, 1989) (psychologist's report evaluating extent of victim's developmental delays is "sufficient evidence to permit reasonable minds to reach different conclusions as to whether the victim's ability to appraise the nature of or control her conduct was substantially impaired"); *State v. Joseph*, 1st Dist. Hamilton No. C-840751, 1985 WL 8947, 3, 1985 Ohio App. LEXIS 6953, 8-9 (July 24, 1985) ("[a] finding of mental retardation * * * could logically lead one to believe that a person * * * is substantially impaired" under R.C. 2907.03.).

{¶66} K.W.'s I.Q. was 66 in 2003 and 76 by 2019. Dreyer and Nestheide agree that K.W. has borderline intellectual functioning. Additionally, K.W., who was in her 30s, had never lived independently. Her "constellation of physical conditions" required regular support. K.W. received services through DDS at least until the age of majority and became eligible for DDS services again in August 2019. K.W. testified that her DDS services should never have been discontinued. And the Mayerson Center does not evaluate normally functioning adults.

{¶67} Dreyer testified that K.W. could consent to sex. Nestheide testified that she could not. This case truly was a battle of the experts. Sufficient evidence supported K.W.'s lacking the capacity to consent to sexual activity.

**Gasper had knowledge of K.W.'s substantial impairment**

13

{¶68} A person acts with "knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B). When a defendant's "knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if [the defendant] subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.* A defendant's knowledge "may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim." (Citations omitted.) *Jordan*, 1st Dist. Hamilton Nos. C-210198 and  Hamilton Nos. C-210199, 2022-Ohio-1512, at ¶ 16, quoting *State v. Foster*, 2020-Ohio-1379, 153 N.E.3d 728, ¶ 48 (8th Dist.).

{¶69} Gasper had been working for K.W.'s family for years when his sexual involvement with K.W. came to light. He acknowledged the challenges that K.W. faced but minimized them by emphasizing that she was an adult, contending that her family "infantilized" her, and insisting that her cognitive functioning is in the normal range.

{¶70} But other witnesses' testimony established that Gasper knew, or had reasonable cause to believe, that K.W.'s ability to consent was substantially impaired. The evidence, including K.W.'s testimony itself, was sufficient to support inferred knowledge. We overrule Gasper's second assignment of error.

*State v. Gasper, supra.*

Thus the Ohio First District Court of Appeals applied the same test enunciated in *Jackson*, albeit as that standard is embodied in Ohio case law.  Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), this habeas court is required to defer to that decision unless it is an objectively unreasonable application of *Jackson*.

In arguing the merits of this claim, Gasper focuses on the fact that the State's expert witness testified that the victim's ability to consent was impaired but the defense expert testified to the contrary.  He notes that the jury found him guilty of only one count and not guilty on six others. But that result could well evidence a jury compromise.  Because the sexual encounters between the two went on some time, the jury may have felt that Gasper was more guilty for the first time

14

or that his being punished for the first time was sufficient punishment under the circumstances. Juries do not explain their verdicts. Constitutional assessment of those verdicts must depend on evaluating the evidence as to each count of conviction. Here there was competent evidence of the victim's impairment as to Count One and the jury relied on that evidence to convict. The First District's decision upholding that conviction is neither contrary to nor an objectively unreasonable application of *Jackson*. Ground Two should therefore be dismissed on the merits.

**Ground Three:  Improper Admission of Other Acts Evidence**

In his Third Ground for Relief, Gasper argues the trial court improperly admitted other acts evidence which prejudiced him. This claim was submitted to the First District Court of Appeals as Gasper's Fourth Assignment of Error and that court decided it as follows:

> {¶77} In his fourth assignment of error, Gasper argues that the other-acts evidence in which K.W. asserted that Gasper had killed her dog, Candy, should have been excluded because it was not relevant to whether K.W. had the ability to consent or resist due to a substantial mental impairment. He further argues that this evidence was prejudicial in swaying the jury against him.
>
> {¶78} "Evid.R. 404(B) only applies to '[e]vidence of other crimes, wrongs, or acts' extrinsic to the charged offense and not those acts that are intrinsic to the offense." *State v. Ludwick*, 4th Dist. Highland No. 21CA17, 2022-Ohio-2609, ¶ 21, quoting *State v. Lotzer*, 3d Dist. Allen No. 1-20-30, 2021-Ohio-3701, ¶ 10.
>
> {¶79} The trial court determined that the accusation that Gasper killed K.W.'s dog was intrinsic to the offense. We agree. K.W. testified that she believed Gasper had killed Candy so that K.W. would move to Tennessee with him and because Candy barked at Gasper when he was in K.W.'s bed, which was in her parents' home. The testimony did not involve acts extrinsic to the offenses for which Gasper was accused. Instead, they involved an act that, if it occurred, would have helped facilitate Gasper's engaging in sex with K.W.
>
> ¶80} Gasper's fourth assignment of error is overruled.

15

*State v. Gasper, supra.*

As can be seen, the First District decided that evidence about the killing of K.W.'s dog was not extrinsic to the underlying charge of rape, but intrinsic to the charge for which Gasper was on trial. That is, it was not "other acts" evidence, but evidence inferentially related to the crime that was charged.

But even if the Court of Appeals had found it was extrinsic but held it not to be reversible error, that would not support granting the writ because the allowance of other bad acts evidence has never been held by the Supreme Court to violate the Constitution. The Sixth Circuit has held "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Gasper's Third Ground for Relief is not cognizable in habeas corpus and should therefore be dismissed.

**Ground Four:  Failure to Grant a New Trial**

In his Fourth Ground for Relief, Gasper asserts he was denied due process when his motion for new trial was denied.

Like Grounds One and Three, Ground Four also does not state a claim for relief cognizable in habeas corpus. There is no clearly established Supreme Court precedent which holds that under certain circumstances – for example, persuasive new evidence – a State must grant a criminal defendant a new trial. Nor is there any clearly established Supreme Court precedent which dictates

16

the procedure which must be followed when a defendant seeks a new trial.

As often occurs in habeas corpus cases, a petitioner believes he has been denied a procedure or an outcome from some process which is prescribed in state law.  After he loses in the state court, he claims that denial was denial of a process he was due, or "due process."  The Sixth Circuit has held "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993)."  Although most if not all States have a process for considering whether a criminal defendant should be granted a new trial, there is no clearly established Supreme Court precedent establishing such a process as required by the Fourteenth Amendment.

Gasper's Fourth Ground for Relief should be dismissed as not cognizable in habeas corpus.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 23, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

17

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #